**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-222

NILE J. BOLDT, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

VENAXIS, INC.,
STEPHEN T. LUNDY, and
JEFFREY G. MCGONEGAL,

Defendants.

---

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

---

Plaintiff Nile J. Boldt ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Venaxis, Inc. ("Venaxis" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Venaxis securities between March 13, 2014 and January 28, 2015, both dates inclusive (the "Class Period"). Plaintiff seeks to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Venaxis is a Colorado-based *in vitro* diagnostic company focused on developing and commercializing its lead product candidate, the APPY1 diagnostic test. The APPY1 test is designed to aid in the identification of patients at low risk for acute appendicitis.

3. On March 13, 2014, the first day of the Class Period, the Company announced positive top-line results from its pivotal APPY1 U.S. study. According to the Company, the APPY1 test "performed well, with sensitivity and negative predictive value results that exceeded those from the previous pilot study. ***The company believes these pivotal results are sufficient for potential FDA clearance and expects to finalize its 510(k) submission and file with the FDA in the next few weeks***."

4. Shortly thereafter, on March 31, 2014, the Company announced that it had filed a 510(k) premarket submission for the APPY1 test. A 510(k) is a premarket submission made to the U.S. Food and Drug Administration ("FDA") to demonstrate that the device to be marketed is at least as safe and effective, that is, "substantially equivalent," to a legally marketed device that is not subject to a Premarket Approval ("PMA"). Submitters must compare their device to one or more similar legally marketed devices and make and support their substantial equivalency

claims. According to the press release, the Company requested concurrent *de novo* determination[1] and 510(k) clearance from the FDA.

5. Throughout the Class Period, however, Defendants made materially false and misleading statements regarding the APPY1 510(k) submission and the Company's future prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the APPY1 test failed to meet the criteria for "substantial equivalence" based upon data and information submitted by Venaxis in its 510(k) submission; (2) the Company lacked a reasonable basis to conclude that the results from the APPY1 pivotal study were sufficient to support FDA clearance; and as a result of the foregoing, (3) Venaxis' public statements pertaining to the expected FDA clearance of its 510(k) submission were materially false and misleading at all relevant times.

6. On January 29, 2015, Venaxis issued a press release disclosing that "the United States Food and Drug Administration ("FDA") has determined that the *APPY*1 Test does not meet the criteria for substantial equivalence based upon data and information submitted by Venaxis in its 510(k) submission." According to the press release, Steve Lundy, President and CEO of Venaxis, stated:

> This FDA decision is very disappointing. The FDA provided us with a comprehensive description of the issues that led to its decision. We are in the process of reviewing all aspects of the FDA letter communication and evaluating, with our advisors, alternatives available to us. Such alternatives include continuing to seek U.S. regulatory approval for APPY1, exploring study protocols to address matters identified by the FDA, assessing the acceleration of our

[1] If a predicate device with the same intended use cannot be identified, or if the new device's different technological characteristics raise different questions of safety or effectiveness, a manufacturer may submit a *de novo* request. According to FDA guidance, a manufacturer who intends to submit a direct *de novo* request is encouraged to engage in dialogue with FDA through the pre-submission process to obtain additional feedback related to whether a valid predicate exists for the new device and appropriate performance data that will be necessary to support a reasonable assurance of safety and effectiveness.

> APPY2 next generation product and pursuing our commercial advances being made in Europe. We believe that the strong clinical trial results we achieved and the additional clinical utility information we provided to the FDA in responses to its requests for additional information were compelling, and we intend to continue to work with the FDA to advance the progress of a blood-based diagnostic test to assist in the evaluation of appendicitis.

7. As a result of this news, shares of Venaxis fell $1.49, or more than 73%, on extremely heavy volume, to close at $0.55 on January 29, 2015.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

12. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff, as set forth in the accompanying Certification, acquired Venaxis securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14. Defendant Venaxis is a Colorado-based *in vitro* diagnostic company focused on developing and commercializing the APPY1 diagnostic test. The Company trades on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "APPY."

15. Defendant Stephen T. Lundy ("Lundy") has served as the Chief Executive Officer, President, and a member of the Board of Directors for the Company at all relevant times.

16. Defendant Jeffrey G. McGonegal ("McGonegal") has served as the Chief Financial Officer for the Company at all relevant times.

17. The defendants referenced above in ¶¶ 15 – 16 are sometimes referred to herein as the "Individual Defendants."

18. Defendant Venaxis and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

19. The Company's primary focus is the development and commercialization of APPY1, which is a multi-marker blood test panel intended to be used by emergency department physicians to aid them in the evaluation of possible appendicitis in children, adolescent and young adult patients (ages 2 – 20) that present with abdominal pain. The Company is not currently aware of any blood tests that are cleared by the FDA for the purpose of aiding in the rule out of appendicitis, nor is the Company aware of any current competitors in this area.

20. In August 2012, the Company provided a pre-investigational device exemption (pre-IDE) submission to the FDA and had a meeting with the FDA in September 2012, as well as

follow-up communications in January 2013. This submission and subsequent meetings documented the planned regulatory path for APPY1, which the Company pursued on a *de novo* basis, as well as an achieved agreement on the statistical analysis plan and protocol for the clinical trial. According to the Company's most recent Form 10-K, "[t]his cooperative approach with the FDA led to an enhanced clinical trial protocol and proposed intended use statement for *APPY*1."

21. In January 2013, Venaxis began enrolling patients into its pivotal clinical study in the United States and completed that enrollment in January 2014.

**Materially False and Misleading**
**Statements Issued During the Period**

22. On March 13, 2014, the first day of the Class Period, the Company announced positive top-line results from its pivotal APPY1 U.S. study. According to the Company, the APPY1 test "***performed well, with sensitivity and negative predictive value results that exceeded those from the previous pilot study. The company believes these pivotal results are sufficient for potential FDA clearance and expects to finalize its 510(k) submission and file with the FDA in the next few weeks***."

23. On March 28, 2014, the Company filed a Form 10-K with the SEC for the fiscal year 2013, which was signed by defendants Lundy and McGonegal. With regard to the Company's APPY1 development, the Form 10-K stated, in part:

> We expect *APPY*1 will help physicians manage those patients who are suspected of having acute appendicitis by aiding in the identification of those that can be determined to be at sufficiently low risk to avoid imaging procedures which are costly, potentially harmful to patients and increase the amount of time spent in the emergency department by the patient We believe *APPY*1 may potentially mitigate unnecessary radiologic imaging in a percentage of the patient population suspected of having acute appendicitis, but are at low risk for the disease. The use of *APPY*1 in emergency departments could also positively impact resource utilization, and improve patient management and overall emergency department efficiency. The primary focus of our recent efforts is directed toward obtaining

> U.S. regulatory clearance for *APPY*1 for children and adolescents. We are focusing on this population because acute appendicitis is primarily a disease that impacts children, adolescents and young adults, and the young ages of these patients heighten the risk from exposure to potentially harmful ionizing radiation.

24. Shortly thereafter, on March 31, 2014, the Company issued a press release announcing that it filed its 510(k) premarket submission for the APPY1 test, with the requested concurrent *de novo* determination, with the FDA. According to the press release, in the "pivotal U.S. clinical study, the APPY1 Test performed with negative predictive value (NPV) of 97.3%, which is the primary metric for the APPY1 Test, sensitivity of 96.9% and specificity of 37.8% on the target population. NPV and sensitivity are the key performance measures, and the results exceeded the clinical study protocol objectives and the results from Venaxis' previous pilot study." Moreover, defendant Lundy stated, in part:

> We are highly encouraged by the positive results from our pivotal clinical study, and I would like to thank all of our clinical partners and staff for the excellent work on this pivotal trial and submission. We look forward to working collaboratively with the FDA as they review our submission.

25. On April 3, 2014, the Company issued a press release announcing that it had agreed to issue and sell 8,335,000 shares in a public offering price of $2.40 per share. According to the press release, the Company estimated that it would receive net proceeds of approximately $18.4 million from the offering after deducting underwriting discounts and commissions and offering expenses. The Company indicated that it would use the net proceeds from the offering for sales and marketing initiatives, continued product development, and general corporate purposes. The offering closed on April 8, 2014.

26. On July 16, 2014, the Company issued a press release updating the market on recent activities concerning its FDA submission for the APPY1 test. According to the press

release, the FDA reviewed the submission, and provided Venaxis with questions and information requests on the submission. Additionally, the press release stated, in part:

> Venaxis is compiling responses to the FDA's questions and their requests for additional data and information, as well as seeking clarification from the FDA on certain of its requests. Under the FDA's Submission Issue Meeting procedures, we expect a meeting in the upcoming weeks to discuss the items on which we seek clarification.
>
> Steve Lundy, President and CEO of Venaxis, stated, "***We are encouraged by the FDA's responsiveness to our filing and look forward to working collaboratively with the FDA to complete the review process.***"

27. On August 11, 2014, the Company hosted an investor conference call to discuss business updates, including discussion on the progress of its APPY1 FDA submission. According to the conference call update, the FDA clarified the scope of the additional data requested to complete the supplemental filing to the submission package. Venaxis indicated that it was in the process of compiling these data, revising its submission to address the FDA feedback, and planned to fully comply with the FDA's additional information request. Moreover, during the conference call, defendant Lundy provided the following details regarding the discussions with FDA, stating, in part:

> Our discussions focused on two primary areas. The first was labeling and intended use language and anticipated use of the APPY1 Test by emergency department physicians. The second area focused on additional informational requests by the FDA regarding analytical data on the APPY1 Test itself. These include precision studies, verification of reference ranges and other test-related analytical information.
>
> * * *
>
> ***We are very pleased that we are in alignment with the FDA on this course of action and will work with the FDA to ensure that our validation study and revised labeling addresses the FDA feedback regarding the clinical use of the APPY1 Test.***
>
> On the second issue of analytical studies, again, ***we had a very productive discussion with the FDA on further data and information requests. We are in***

> ***the process of compiling these required data***. Venaxis plans to fully comply with the FDA's requests and anticipates no significant issues in doing so.
>
> Based on the recent meeting, we believe we now have a go-forward strategy to address the FDA's questions and information requests we have received to date on the submission. We expect that we will participate in additional interim updates and discussions with the FDA, anticipated to be followed by submission of supplemental data and proposed labeling enhancements.

28. On December 3, 2014, the Company issued a press release announcing that it had filed its response to the FDA's Additional Information ("AI") request related to the Company's APPY1 direct *de novo* submission. On December 8, 2014, the Company hosted a conference call with investors to explain these recent developments. During the conference call, defendant Lundy discussed the ongoing discussions with the FDA, stating, in part:

> As reported earlier, our discussions with FDA have continued to focus on the two primary areas covered in the FDA's AI request. The first was product labeling and intended use language and anticipated use of theAPPY1 Test by emergency department physicians. The second area focused on additional informational requests by the FDA regarding analytical data on the APPY1 Test itself, including precision studies, verification of reference ranges and other test-related analytical information.
>
> ***We believe our response package fully addresses the FDA questions regarding the projected use of theAPPY1 Test in the emergency department setting***. As stated on our last call, the APPY1 Test would be the first in-vitro diagnostic device cleared specifically for aiding in the rule out of appendicitis. As with any "first time" device, the FDA will evaluate the submission to fully understand the benefits and potential risks associated with the device. In order to assist the FDA in fully evaluating the APPY1 Test, our amended submission contained the following key elements:
>
> > 1. Improved labeling and training materials which we believe concisely addresses theAPPY1 Test's intended use, indications for use, and limitations and precautions.
> >
> > 2. A 3rd party study covering 200 physicians that demonstrated understanding of our revised labeling and training materials in the appropriate responses to a survey that successfully validated the use the APPY1 Test, ensuring patient safety. This study was supplemented by expert clinician opinions supplied by physicians

> supporting the potential benefits and use of the APPY1 Test in the assessment of patients suspected of having acute appendicitis.
>
> 3. Analytical data on theAPPY1 Test itself, including precision studies, verification of reference ranges and other test-related analytical information.

> ***We believe that this amended package of data, along with the large body of data already submitted to FDA from our trial, comprehensively addresses the issues FDA has raised regarding the use of APPY1 in clinical practice once it is cleared for use***.
>
> In summary, since our last investor update, we have had a number of productive discussions with FDA and are pleased to report we have recently sent our amended submission information to the FDA. I am thankful to our staff and consultants for their many dedicated hours of work in preparing our responses to the FDA's requests for additional information.

29. The statements referenced above pertaining to the APPY1 510(k) submission and the Company's future prospects were materially false and/or misleading and/or failed to disclose that: (1) the APPY1 test failed to meet the criteria for "substantial equivalence" based upon data and information submitted by Venaxis in its 510(k) submission; (2) the Company lacked a reasonable basis to conclude that the results from the APPY1 pivotal study were sufficient to support FDA clearance; and as a result of the foregoing, (3) Venaxis' public statements pertaining to the expected FDA clearance of its 510(k) submission were materially false and misleading at all relevant times.

**<u>The Truth Emerges</u>**

30. On January 29, 2015, Venaxis issued a press release disclosing that "the United States Food and Drug Administration ("FDA") has determined that the APPY1 Test does not meet the criteria for substantial equivalence based upon data and information submitted by Venaxis in its 510(k) submission." In the press release, defendant Lundy stated:

> This FDA decision is very disappointing. The FDA provided us with a comprehensive description of the issues that led to its decision. We are in the process of reviewing all aspects of the FDA letter communication and evaluating,

> with our advisors, alternatives available to us. Such alternatives include continuing to seek U.S. regulatory approval for *APPY*1, exploring study protocols to address matters identified by the FDA, assessing the acceleration of our *APPY*2 next generation product and pursuing our commercial advances being made in Europe. We believe that the strong clinical trial results we achieved and the additional clinical utility information we provided to the FDA in responses to its requests for additional information were compelling, and we intend to continue to work with the FDA to advance the progress of a blood-based diagnostic test to assist in the evaluation of appendicitis.

31. As a result of this news, shares of Venaxis fell $1.49, or more than 73%, on extremely heavy volume, to close at $0.55 on January 29, 2015.

32. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

33. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Venaxis securities traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Venaxis securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Venaxis or its transfer agent and may be notified

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Venaxis;
- whether the Individual Defendants caused Venaxis to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Venaxis securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Venaxis securities are traded in efficient markets;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Venaxis securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Venaxis securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Venaxis securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Venaxis securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Venaxis' finances and business prospects.

46. By virtue of their positions at Venaxis, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Venaxis securities from their personal portfolios.

48. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Venaxis, the Individual Defendants had knowledge of the details of Venaxis' internal affairs.

49. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Venaxis. As officers and/or directors of a publicly-held company, the Individual Defendants had

a duty to disseminate timely, accurate, and truthful information with respect to Venaxis' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price for Venaxis' securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Venaxis' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Venaxis securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

50. During the Class Period, Venaxis' securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Venaxis securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Venaxis securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Venaxis' securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating false statements to the investing public.

## COUNT II

### Violation of Section 20(a) of The Exchange Act Against The Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. During the Class Period, the Individual Defendants participated in the operation and management of Venaxis, and conducted and participated, directly and indirectly, in the conduct of Venaxis' business affairs. Because of their senior positions, they knew the adverse non-public information regarding Venaxis' business practices and future prospects.

55. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Venaxis' APPY1 510(k) submission and the Company's future prospects, and to correct promptly any public statements issued by Venaxis which had become materially false or misleading.

56. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Venaxis disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and

authority to cause Venaxis to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Venaxis within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Venaxis securities.

57. Each of the Individual Defendants, therefore, acted as a controlling person of Venaxis. By reason of their senior management positions and/or being directors of Venaxis, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Venaxis to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Venaxis and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Venaxis.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: February 2, 2015

Respectfully submitted,

*s/Kip B. Shuman*

Kip B. Shuman
Rusty E. Glenn
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 536-7849
Email: Kip@shumanlawfirm.com
Email: Rusty@shumanlawfirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
fmcconville@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, Nik J. Boldt, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Venaxis, Inc. ("Venaxis" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Venaxis securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Venaxis securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Venaxis securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I deolare under penalty ofperjury that the foregoing is true and corect.

Executed 1/30/2015
(Date)

(Signature)

Nike Boldt
(Type or Print Name)

**VENAXIS, INC (APPY)** **Boldt, Nile**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 10/21/2014 | PUR | 238 | $1.3699 |